The judgment appealed from should be affirmed, with costs.

DALY, Ch. J., and J. F. DALY, J., concurred.

Ordered accordingly.

---

WILLIAM FALLON, JR., BY GUARDIAN, &c., *against* THE CENTRAL PARK, NORTH AND EAST RIVER RAILROAD COMPANY.*

(Decided March 1st, 1875.)

A child of the age of five years and three months, and which had never been known to go into the street alone, after having been playing in the yard all day with other children, came into the house for a drink of milk, which its mother gave it and placed at the table to drink it, and went into an adjoining room to change her dress, and in a few moments, without her knowledge, the child left the room and went into the street, and was run over by the defendant's car: *Held*, that whether there was negligence in the mother which could be imputed to the child, was a question properly submitted to the jury.

APPEAL by defendant from a judgment of this court entered on the verdict of a jury after a trial before Judge LOEW.

The action was brought against the defendant, a horse car railroad company, to recover damages for the negligence of its servants in allowing a car of the defendant to run over and injure the plaintiff.

---

* This judgment was affirmed in the Court of Appeals. See 64 N. Y. 13.

Fallon v. The Central Park, North and East River Railroad Company.

At the time of the accident the plaintiff was of the age of five years and three months, and the defense principally relied on was negligence attributable to the plaintiff or his parents.

The evidence of the mother of the plaintiff on this point was as follows:

"At the time of the accident I resided at 961 First avenue. I remember the 11th of April, 1872; that day I was in my own room, one pair of stairs up—the first floor, front room. The plaintiff was with me; he was then five years and three months old. The house was on the northwest corner of Fifty-third street; there was a yard attached to the house. The street was at that time closely built up. At that time I had four children. When I last saw the plaintiff before the accident, he was playing in the yard with his brothers and sisters; he came in for a drink of milk. The stairs coming up lead into the yard. I had the door to the back yard open, and also the door to my sitting-room for the children to go out and in the yard. The plaintiff had been playing there all day; he came in about ten minutes to four, and said, 'Mamma, I want a drink of milk;' I gave him the milk, and let him sit at the table to drink it; I then went in the bed-room to change my dress, and while I was in there he slipped out, and I did not see him until he was injured. It was about five minutes from the time I gave him the drink until I carried him home. He had a cap on when he went out; I did not know where he went when he went out, but thought he had gone into the yard after getting the milk.          *          *          *          *          *          *

" Q. Had you ever known him to go out into the street before?

" A. I never knew him to cross the street.

" Q. Had you known him to go into the street alone, before?

" A. No, sir; it was a very large yard, and there was a lot adjoining it—all fenced in, and other little children used to play with him, which attached them to the yard."

The fifth proposition of law which the defendant's counsel requested the court to charge, was as follows:

" That it is the duty of a person about crossing the street to look along the street in both directions to see whether cars or

other vehicles are approaching, and if so, their rate of speed; and the omission to do so would be an act of negligence."

The court refused so to charge, and charged as follows:

"It is ' ordinarily ' the duty of a person about crossing the street to look along the street in both directions to see whether cars or other vehicles are approaching, and if so, their rate of speed ; and the omission to do so would be an act of negligence."

To the refusal to charge and to this charge defendant excepted.

The jury rendered a verdict in favor of the plaintiff for $7,500, the evidence having shown that both of his legs were crushed by the accident, so as to require amputation.

*Brown, Hall & Vanderpoel*, for appellant.

*Edward D. McCarthy*, for respondent.

DALY, Chief Justice.—The boy was over five years old, and whether he was of sufficient discretion to be allowed to go into the street unattended, was a question which the twelve men in the jury box were quite as able to judge of as a court could be.  The mother testified that she had never known him to go into the street alone before, and the judge told the jury that they must find for the defendant if they believed that the mother was guilty of negligence in permitting the boy to go into the street, or as he further said, if she omitted to exercise such care in respect to her child, as a person of ordinary prudence would exercise or deem proper under like circumstances, or if they believed that the boy omitted to exercise such care as might reasonably be expected from one of his age.

The case did not show any negligence on the part of the mother.  She had never known the child to go into the street. She was the mother of four children.  The child had been playing in the yard with his brother and sister during the preceding part of the day.  She had the door to the back yard open, and the door of the sitting room open for the children to go out into the yard.  The child came in for a drink of milk.  He sat at a table to drink it, and she went into a bed-room to change her dress, and when she returned the child had left, and she did

not see him again until after the accident, which occurred very soon thereafter. I think it is plain, upon this state of facts, that no negligence could be imputed to the mother. She lived on the first story of the house. From the story there were stairs leading to the yard, and stairs that led directly to the sidewalk, and the child on leaving the room must have gone down the latter stairs into the street. I do not see that anything on her part could be regarded as contributory negligence, unless that as a proposition of law, it is to be assumed from a child who was five years and three months old being in the street, and I am not prepared to go that length. I think the proper course is to do what the judge did—to leave the question to the jury.

The jury have found that there was not, on the part of the mother, that want of care of the child, which persons of ordinary prudence would exercise, and the child being on the street and having undertaken to cross it, what degree of care and prudence was required on his part? That question Lord Denman has answered in the oft cited case of *Lynch* v. *Nurdin* (1 Adolf. & El. N. S.) in respect to a child between six and seven years old, that he must show the qualities of thought, care and prudence in as great a degree as he possessed them, and to go beyond this; to hold that he must have all the experience and exercise the judgment of an adult, would be a palpable absurdity.

In this case, the evidence of the plaintiff's witnesses, who were the only ones who saw the accident and how it occurred, shows that it was caused by the reckless negligence of the driver of the car, and there is no evidence, except the conflicting evidence of the defendant's witnesses as to the rate of speed, to show that there was on the part of the child any want of the care and caution to which an adult would be held. On the contrary, William De Forrest, an adult, stood on the south-east corner of the street as the car was coming towards him, and had, as he testified, his eyes on it, as he intended to take it. He also saw the child coming across the street from the northeast corner, and he saw him last before the car went over him. He was very near the track. Having the child and the approaching car thus in full view, he says he did not anticipate any accident. That it did not occur to him that *if the child kept*

*on his path*, the horses would knock him down and the car run over him. That nothing he "saw suggested that—nothing at all." If that was the impression of an adult looking on, what ground is there for any assumption that the child by his thoughtlessness, want of care and negligence contributed to the accident? He was crossing with other children, who were coming after him, and the reason why he was struck was the ra-. pidity with which the car was driven by a driver who, by his own statement, was looking ahead *at his horses*, and did not see the child until the car had passed over him. De Forrest says the horses were on a gallop, going fast, very fast, so fast that they went more than half a *block* after they run over the child. Mrs. Hallom says the horses were galloping, that she never saw a car driven so hard, that it was an unnatural rate, and William Lawless testified that the driver was "just on his slings with his reins, going like lightning—the same as if he was not going to stop for three or four blocks." Mrs. Hallom saw the car coming, and seeing the little children crossing, raised up her hand and called out "stop the car; there are children crossing," but she says no one looked at her nor minded her, but the driver drove on with the same rate of speed, and could not help but knock the child down.

That the rate of speed was unusual was denied by the driver, by the conductor, and by another driver of the Third avenue cars who was a passenger and standing on the front platform. The driver said that the regular gait was six miles an hour, and that he was not going faster than seven miles. The conductor did not think the horses were galloping, but admitted that he did not see them; and the other driver testified that the car was going at about the usual rate of speed, which testimony, we may assume from their finding, the jury did not credit. This was the state of facts, and the jury having passed upon them their verdict should not be disturbed.

None of the defendant's witnesses, neither the driver, the two passengers nor the conductor, who were on the platform, saw what occurred in the street before the accident, and I therefore do not think that the fifth proposition which the judge was requested to charge was material, but think that, upon

the facts in the case, he went far enough by charging that it was *ordinarily* the duty, &c. The qualification of the other propositions I do not regard as impairing their effect in their application to the facts, and am therefore of opinion that the judgment should be affirmed.

LARREMORE and J. F. DALY, JJ., concurred.

Ordered accordingly.