### GARONI *v.* COMPAGNIE NATIONALE DE NAVIGATION OF MARSEILLES.

(*Common Pleas of New York City and County, General Term.* June 1, 1891.)

**1. IMPUTED NEGLIGENCE—EVIDENCE.**

Plaintiff, an infant child, and steerage passenger on board of a steam-ship with its mother and father, got up from its seat on the deck, where all the passengers had been assembled by order of the captain, to be vaccinated, and attempted to follow its father for a drink of water, and in so doing was crowded by his fellow-passengers against an exposed rudder-chain, on which he placed his foot, which was immediately thereby drawn into a block and crushed. *Held*, that a finding by the jury that plaintiff was not on the deck unattended, and that his parents exercised ordinary care for his safety, was sustained by the evidence.

**2. SAME—INSTRUCTIONS.**

In such case, defendant's request to charge that if the jury found from the evidence that the accident was caused by the child's placing his foot upon the chain of his own accord, without being pushed upon it by the crowd, his negligence was

such that he could not recover, was properly refused, the effect of such instruction being to charge the child for his own carelessness, as if *sui juris*, and not with that of his parents.

**3.** CARRIERS—CONSTRUCTION OF VESSEL—EXPOSED RUDDER-CHAIN.

A steam-ship company left its rudder-chains exposed on deck, whereby the foot of an infant steerage passenger was caught in one of its links, and drawn into a a block and crushed. In an action to recover damages therefor there was testimony to show that such construction was unusual and dangerous. Defendant claimed that the vessel was constructed like others of its class, and that plaintiff was not entitled to unusual protection, or to any that belonged to a different class of vessels. The court charged that it was defendant's duty to use the best appliances known, and that no distinction was allowable as to the precautions to be observed by carriers of different classes of passengers. *Held*, that the instruction was correct, and that the evidence justified a finding that the company was guilty of negligence in leaving the chain exposed.

**4.** DAMAGES—EXCESSIVE—LOSS OF LIMB.

The sum of $10,000 damages, recovered by a boy seven years old for an injury necessitating the amputation of his leg at the thigh, is not excessive.

Appeal from trial term.

Action by Angelo Garoni, a boy about seven years old, against the Compagnie Nationale de Navigation of Marseilles, to recover damages for an injury caused by defendant's alleged negligence. From a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, defendant appeals.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Wing, Shoudy & Putnam*, (*Josehph A. Shoudy*, of counsel,) for appellant. *Frederick C. Gedney*, (*Edward C. James*, of counsel,) for respondent.

DALY, C. J. The infant plaintiff, Angelo Garoni, aged over seven years, with his father, mother, brother, and two sisters, was a steerage passenger on the defendant's steam-ship Cachemere, from Naples to New York. There were over one thousand passengers on the ship, which was a new one, making her second voyage. When the vessel was three or four days out from Naples, the captain ordered a general vaccination of the passengers, who were thereupon assembled upon the deck in the stern of the vessel, and were required to go up, one or two at a time, to the bridge, by the starboard gangway, and down on the port side. The Garoni family were on the port side. The mother was ill. The oldest daughter, a girl 15 years of age, held the plaintiff by the hand as she sat beside her mother. The plaintiff wanted a drink of water. His father went to get it. The plaintiff let go his sister's hand, and attempted to follow his father. He was crowded by his fellow-passengers against the rudder-chain, which ran exposed along the deck just inside the bulwarks. He placed his foot upon the chain, which drew it into an iron sheave or block, through which the chain ran, crushing the foot. The plaintiff screamed, and the doctor, who was vaccinating, came to his assistance, and attempted to extricate him. At this juncture, a sailor named Privat, who was stationed at the ladder near by, gave by mistake an order to starboard the wheel, which caused the chain with the child's leg to be drawn still further through the block up to the middle of the thigh, the doctor's hand being also caught and injured. The captain then gave orders to have the movement of the chain reversed, and the boy's leg was relased. The injury required amputation of the leg at the thigh, which was performed. The foregoing is the version of the accident given by the plaintiff's witnesses. The defendant introduced evidence to show that there was no crowd at the place where the child was hurt; that he was entirely alone; that he placed his foot upon the chain; and that the accident occurred at a place where passengers were not allowed to go. The court charged the jury that if they found from the evidence that the plaintiff was allowed by his parents to be upon the deck of the vessel unattended by any one to protect him, they were thereby guilty of negligence; and that the plaintiff was chargeable with the

negligence of his parents, if there was such negligence, in permitting him to be unattended on the deck of the vessel; and that, if the plaintiff failed to establish his own freedom from fault, he was not entitled to a verdict. The finding of the jury in plaintiff's favor established that he was not on the deck unattended; and, under the additional charge that, to constitute negligence in the parents, there must be an omission of such reasonable care as persons of ordinary prudence would exercise and deem adequate for the purpose under the circumstances of the case, the finding of the jury also established that the parents on this occasion exercised ordinary care. The evidence in the case is sufficient to sustain both of these findings. The court refused to charge at defendant's request that if the jury find from the evidence that the accident was caused by the child placing his foot upon the chain, and that he was not pushed upon the chain by any crowd, his negligence was such that he could not recover. This request, based upon the act of the infant himself, assumed that he was *sui juris*, for it sought to hold him responsible, not for his parents' carelessness, but for his own. To charge this request would have withdrawn from the jury the question as to whether the child, if *sui juris*, had exercised such care as was reasonably to be expected from a child of his age. Of this the jury, under the instructions of the court, were to judge; and, taking all the circumstances of the case into consideration,—the crowded emigrant ship, the exposed chain, the natural propensities of a child of the plaintiff's age, the absence of apparent danger and of any warning,— it was a fair question for the jury whether the plaintiff was negligent in putting his foot upon the chain, even if he did so in play. The jury was the judge as to whether the act was heedless or not in a child of the plaintiff's age. That question was fairly submitted under the general instructions upon the law if the jury found that the plaintiff was capable of exercising discretion or judgment. The court charged, at the plaintiff's request, that if the jury found from the evidence that it was negligence on the part of the defendant to leave the steering-chain exposed, the fact that plaintiff was crowded against the chain by his fellow-passengers does not constitute a defense to such negligence. The defendant excepted to the charge, and claims that it took away from the jury the consideration of the question as to how the child came to be in a position where he could be crowded upon the chain. The instruction must be taken with all the prior instructions on this point as to the duty of the parents to use reasonable care, and not to leave the plaintiff at the mercy of the crowd, and the duty of the plaintiff himself to exercise care proportioned to the circumstances and to his tender years. The charge excepted to therefore worked no harm to the defendant. The fact that the child was in such a position that he could be crowded or pushed against the chain was not, as defendant claims, conclusive evidence that either he or his parents were negligent. The parents of a child are not bound to such care as shall make it impossible for the infant to stray into danger. In the case of *Fallon* v. *Railroad Co.*, 6 Daly, 8, where a child aged five years and three months, which had never been known to go into the street alone, after playing in the yard of defendant with other children, came into the house for a drink of milk, which its mother gave it, and, while she went into an adjoining room to change her dress, the child, without her knowledge left the room, and, descending the stairs, went into the street through the open street door, and was run over by a passing railroad car, we held that whether there was negligence in the matter which could be imputed to the child was a question properly submitted to the jury; and in affirming this decision the court of appeals held that the evidence did not establish contributory negligence as matter of law, but that it was a question of fact, and properly submitted to the jury. Id. 64 N. Y. 13.

The question of the negligence of the defendant in leaving the rudder-chain exposed in a place on the deck where a child, either running about in play or

jostled by the crowd, could get his foot upon it, so that that member could be drawn into the sheave or block with a certainty of serious injury, was left to the jury upon proper instructions, and upon evidence which justified a finding that there was negligence.   Mr. Rowland, a ship-builder since 1846, engaged in the building and equipping of passenger steam-ships, connected for the last 19 years with the firm of John Roach & Sons, testified that this construction of the steering gear or chain was very unsafe; that it should be covered; that it is not necessary that the chain should be exposed for the proper steering or handling of the ship; that in American ships, where the chain is on deck, it is covered with a grating; that in all ships now built it is boxed in, or so covered; and that he never in his life saw one exposed like this; and that it is most dangerous, and a regular man-trap.   On the part of the defendant four witnesses were called, who testified that the construction was the usual one, and was proper.   One of these witnesses was a mechanical engineer and ship-builder, one a consulting engineer, and two were inspectors for marine insurance.   The effect of this testimony was to raise a question of fact which it was the province of the jury to determine.   The defendant claimed that nothing could be required of a steam-ship company except the usual construction of vessels of the class to which she belonged; that the plaintiff had no right to require any protection that was unusual, or which belonged to a different class of vessels,—to quote from the brief: "As well might a second-class passenger expect first-class accommodation."   No authority is cited for the proposition that carriers of emigrants are bound to a less degree of care than carriers of passengers generally.   The rule is that the law imposes upon carriers of passengers the highest degree of practicable care, and no distinction has ever been made between carriers of particular classes of passengers.   Hence the exceptions of the defendant to those portions of the charge which stated the general rule, and the refusal to charge that the measure of defendant's duty was reasonable prudence and care only, point out no error.   The court charged that the law imposed upon carriers of passengers the highest degree of practicable care and the use of the best appliances and apparatus which are known and in use.   The defendant claims that this rule has reference only to those appliances of which the passenger is supposed to have no knowledge.   No authority for this distinction is cited. At the defendant's request the court charged the jury that, "in order to charge the defendant with negligence, it must be established to the satisfaction of the jury that the defendant's vessel was, with respect to this chain, constructed in an unusual manner, and that necessary and usual precautions for the safety of passengers were omitted."   Also "that it was not required to have such safeguards on its vessels as to prevent the possibility of accidents to persons incapable of taking care of themselves."   Also "that the defendant is not an insurer of its passengers, and is not bound to use precautions which are unusual, and to equip its vessels so as to avoid the possibility of accident."   These instructions were most favorable to defendant, and showed the jury that nothing unreasonable was exacted by the law from carriers of passengers.   Error is alleged in permitting plaintiff's father and mother to testify that they had never been on board of a ship before.   This had bearing upon the question of care to be expected from the parents of the child, if any negligence on their part was to be attributed to him.   We cannot say that the verdict was against the weight of evidence, and there is nothing in the case or proceedings on the trial which would justify the court in setting the verdict aside and submitting the issues to another jury.   Nor is the verdict excessive.   The child is maimed for life.   The permanence of the injury is not a matter of doubt or speculation, and the damages awarded are no greater than have been given by juries in similar cases, and approved by the general terms.   The judgment and order appealed from should be affirmed.
     All concur.